### In re BURGESS WHOLESALE MFG. OPTICIANS, INC., an Illinois Corporation, Debtor.

### Bankruptcy No. 79 B 40468.

United States Bankruptcy Court, N. D. Illinois, E. D.

Jan. 19, 1982.

Terri Frank, for the U. S. Atty.

Roy R. Moscato, Chicago, Ill., for the debtor.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

### I

This cause comes to be heard on the objection by the United States Attorney to the confirmation of a plan under 11 U.S.C. § 1101 *et seq.* proposed by Burgess Wholesale Mfg. Opticians, Inc., the debtor. The issue before the Court is whether 11 U.S.C. § 1129(a)(9)(C), providing for deferred payment of 11 U.S.C. § 507(a)(6) tax claims, contemplates payment by a Chapter 11 debtor of post petition interest on dischargeable unsecured tax claims. This is a case of first impression under the Bankruptcy Code, and therefore, for the resolution of the case this Court must look to the plain language of the Code, the intent of its draftsmen, and the applicable sections of the prior Bankruptcy Act.

### II

#### FACTS

The debtor filed its petition for relief on November 9, 1979 and a plan of reorganiza-

tion on August 21, 1980 pursuant to 11 U.S.C. § 1121. Within the plan, debtor proposed to pay taxes due to the United States prior to the filing of the petition, plus accrued prepetition interest and a penalty over a five year period. The amounts offered are those determined by the United States in its Proof of Claim filed on April 20, 1981 and entitled "Unsecured Priority Claims under Section 507(a)(6) of the Bankruptcy Code." Payments by the debtor are to be made in equal monthly installments.

The debtor's petition lists disputed tax liabilities to the Internal Revenue Service, the Illinois Department of Revenue, and the Department of Unemployment Insurance Taxes, amounting to $12,578.55. Further, the petition lists a disputed secured claim of First Pacific Bank for $24,500.00 and unsecured claims of other creditors which are undisputed and liquidated, totalling $44,020.51. Scheduled assets of the debtor total $9,040.00, all of which are allegedly subject to a security interest held by First Pacific Bank.

The United States claim is for $14,500.55, stemming from tax liabilities, pre-petition interest, and a penalty. The Government opposes confirmation of a plan which would pay this amount over a 5 year period in equal monthly installments, unless interest on the deferred cash payments is incorporated at the rate prescribed in Internal Revenue Code § 6621. No opinion was expressed by the Government as to what action, if any, should be taken if the legal rate in 26 U.S.C. § 6621 is adjusted after confirmation of a plan.[1]

### III

#### DISCUSSION

The operative section of the Bankruptcy Act allowing a Chapter 11 debtor to defer payments of priority tax claims provides:

---

1. The Government argues in its brief that it is entitled to "interest" on deferred payments. In oral argument, however, counsel for the government asserted that the additional amounts were by way of a "discount factor" and not an interest charge. The body of this opinion addresses the question put forth in the briefs. The entitlement to a discount factor is addressed briefly in the conclusion.

(a) The court shall confirm a plan only if all of the following requirements are met: ...

...(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

...(c) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as to the effective date of the plan, equal to the allowed amount of such claim. 11 U.S.C. § 1129(a)(9)(c).

The United States contends that this language specifically provides for the payment of interest on deferred cash payments. This Court does not find the language itself so compelling in light of the explicit language in 11 U.S.C. § 502(b)(2) which provides:

(b) Except as provides in subsections (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court after notice and hearing, shall determine the amount of such claim as to the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(2) Such a claim is for unmatured interest. 11 U.S.C. § 502(b)(2).

The Government in its brief argues that § 1129 requires a reorganizing corporate debtor to pay interest. In support thereof, it analogizes to the treatment afforded the IRS in *In Re Busman*, 5 B.R. 332, 6 B.C.D. 683 (Bkrtcy., E.D.N.Y.1980).

In *Busman* the co-debtors, Marvin and Laura Busman, were subject to non-dischargeable personal tax liabilities. The IRS perfected tax liens on property in which the debtors had sufficient non-exempt equity, and objected to Chapter 13 wage earners plan which did not provide for post petition interest on the taxes due. The court in *Busman* held that to comply with § 1325(a)(5)(B)(ii) a secured creditor must receive the present value of his allowed secured claim taking into account the discount of money to be received in the future. *Busman*, 5 B.R. 332, 337. Having determined that the IRS had a secured claim the court found it was entitled to post-petition interest on the deferred payment. *Busman*, 5 B.R. 332, 341.

The court in *Busman* found authority for its interpretation of § 1325(a)(5)(B)(ii) of the Code in a Bankruptcy Act case, *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). Chief Justice Warren speaking for the court in *Bruning* held that:

Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy. The general humanitarian purpose of the Bankruptcy Act provides no reason to believe that Congress had a different intention with regard to personal liability for the interest on such debts. *Bruning*, 376 U.S. 358, 361, 84 S.Ct. 906, 908.

The court in *Bruning* distinguished the cases of *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911), (articulated the general rule that interest on debts stops at bankruptcy, former 11 U.S.C. § 63(a)(1)) and *New York v. Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949), (applied the rule stated in *Sexton* to claims against a trustee for taxes as well as for other debts). The opinion in *Bruning* states:

As to claims against the trustee of the bankrupt the general rule for liquidation of the bankrupt estate has long been that a creditor will be allowed interest only to the date of the petition in bankruptcy. In *New York v. Saper*, this Court held that the general rule applies to claims against the trustee for taxes as well as for other debts. But the instant case concerns the debtor's *personal* liability for post petition interest on a debt for taxes *that survives bankruptcy* to the extent that it is not paid out of the estate. *Bruning*, 376 U.S. 358, 362, 84 S.Ct. 906, 908. [Emphasis added] [Citations omitted]

The Government's reliance on *Busman* and vicariously on *Bruning* in the instant

case is misplaced. First and foremost, the *Busman* decision was an interpretation of 11 U.S.C. § 1325(a)(5)(B)(ii). That section applies with respect to allowed secured claims. The instant case involves an unsecured priority claim. Therefore, the more similar counterpart to 11 U.S.C. § 1129 in a Chapter 13 proceeding is 11 U.S.C. § 1322(a)(2) which provides:

> The plan shall ... provide for full payment, in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim, ... 11 U.S.C. § 1322(a)(2).

A priority unsecured tax claim, as in the instant case, would be subject to the provisions of 11 U.S.C. § 1322, under which no court has held the Government is entitled to post-petition interest.

Second, as stated earlier, the traditional rule regarding post petition interest was that it was not allowed to be recovered from the estate. *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911); *City of New York v. Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949) (applied the *Saper* rule to taxes); *United States v. Edens*, 189 F.2d 876 (4th Cir., 1951), *aff'd per curiam* 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682 (1952) (applies the *Saper* rule to a Chapter X corporate debtor).

The Court in *Edens* stated:

> The equitable considerations which justify denying post bankruptcy interest on tax claims in the case of reorganization proceedings are quite as strong as for denying it in straight bankruptcy proceedings. The real reason in either case is that the delay resulting from the institution of the proceeding should not be permitted to benefit one class of creditors at the expense of another but that the rights of all should be determined as of the commencement of the proceeding. 189 F.2d at 877 n. 10.

Likewise, the *Saper* rule was extended to include Chapter XI arrangement proceedings, *United States v. General Engineering & Mfg. Co.*, 188 F.2d 80 (8th Cir., 1951),

*aff'd per curium* 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682 (1952). See also Collier on Bankruptcy, ¶ 502.02 at 502–35 (15th Ed. 1981). The authors in Collier conclude that: [t]here is no reason to suppose that the disallowance provision of 502(b)(2) would not be applicable to cases under Chapter 11 of the 1978 legislation." *Id.* at 535.

Finally, a distinction was drawn under the previous Bankruptcy Act, between the ability to collect post-petition interest from a Chapter X or XI estate as opposed to the debtor itself. *Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710. This distinction developed to maintain the vitality of sections 17(a)(1) and 371 of the Act, which made proved tax liability non-dischargeable. *American Iron & Steel Mfg. Co. v. Seaboard Air Line R. Co.*, 233 U.S. 261, 266–67, 34 S.Ct. 502, 504–505, 58 L.Ed. 949 (1914); *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 164, 67 S.Ct. 237, 240–241, 91 L.Ed. 162 (1946). A primary rule of statutory construction has always been to disfavor a reading which renders a contemporary provision in a statute a nullity.

Cases interpreting whether a Chapter X or XI debtor, which remains liable for taxes after discharge under the Old Act, is subject to post petition interest have disagreed. Compare *In Re Aristo Foods*, 3 B.C.D. 476, 13 C.B.C. 542, C.C.H.Bankr.L.Rptr. ¶ 66, 699 (W.D.Mo., 1977), *aff'd.* 77–2 U.S.T.C. ¶ 9711, 45 A.F.T.R.2d 80–355, with *In Re Jaylaw Drug, Inc.*, 621 F.2d 524, 6 B.C.D. 392, 22 C.B.C. 1075, C.C.H.Bankr.L.Rptr. ¶ 67,426, 80–1 U.S.T.C. ¶ 9408 (2nd Cir. 1980).

Congress under the Bankruptcy Code has given substantial guidance for resolving the issue. First, corporate tax liabilities under the Code, 11 U.S.C. § 523, are dischargeable. *In re Kuempel*, 7 B.C.D. 1206, 14 B.R. 324 (Bkrtcy., S.D.Ohio, 1981). Therefore there is no longer an impetus to require a debtor to pay post-petition interest where the debtor's estate has been discharged to satisfy the tax liability. Furthermore, a Chapter 11 debtor in possession under the Code has the same rights and duties as the trustee, 11 U.S.C. § 1107, and therefore, the holding in *Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710—that a trustee is not liable for

post petition interest—argues against awarding the Government post petition interest against a debtor-in-possession.

## CONCLUSION

The Government's argument relies on the interpretation of a Chapter 13 section awarding interest to secured creditors on a deferred payment plan. This Court finds such an argument unpersuasive because the Code section referred to by the Government is not directly analogous to the section in question. Further, since the Code disallows post petition interest, 11 U.S.C. § 502(b)(2), makes a corporate debtor's tax liability dischargeable, 11 U.S.C. § 523, and empowers the court to confirm a plan only where it will not impair another class or member of the same class, 11 U.S.C. § 1129(a)(8)(B), this Court is persuaded that no interest was intended to be allowed on unsecured priority tax claims where fellow unsecured creditors are not paid in full. The Government in its oral argument contended that the additional amount sought was by way of a discount factor to adjust the amount received to equal present day value. It supports this proposition with a quote from the legislative history of 11 U.S.C. § 1129 which states:

> Tax claims entitled to priority under 507(a)(6) ... may be required to take deferred cash payments over a period not to exceed 6 years after the date of assessment of the tax with the present value equal to the amount of the claim. [124 Cong.Rec.H., 11,103 (daily ed. Sept. 28, 1978); 124 Cong.Rec. § 17,420 (daily ed. Oct. 6, 1978)].

The amount paid on an unsecured claim in a corporate reorganization is entirely dependent upon the success of the proposed plan. Further, the viability of the plan depends substantially upon the ability of the debtor to fix the amount of current liabilities and determine with certainty the amounts to be paid on each claim. When a plan is proposed, a percentage of each unsecured debt is offered. In the case of a priority claim it is fixed at 100%. Other unsecured creditors are entitled to at least what they would receive in a Chapter 7 liquidation, 11 U.S.C. § 1129(a)(7). In the instant case the debtor has proposed to pay all other unsecured creditors 25%. This amount is to be paid over a five year period and draws no interest during this period. To allow interest on the 100% payment of the Government's unsecured claim where there is no equity in any of the debtor's property and where a Chapter 7 liquidation would result in considerably less than 100% payment to the IRS would cause the debtor to re-evaluate the desirability either of reorganizing or the amount to be offered to other unsecured creditors. To force a reduction in the payment of equally secured claims, which have already been impaired by 75%, in order to provide post petition interest on one claim is contrary to the spirit of a Chapter 11 reorganization.

For the reasons stated and in light of the contradictory language in at least two other sections of the Code, this Court holds that unsecured priority tax claims in a Chapter 11 reorganization are not entitled to post petition interest where other creditors are not paid in full. Counsel for the debtor will submit a draft order consistent with this Opinion within 10 days.